UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANA BUKOWSKI,                                                                                           PLAINTIFF

vs.                                                              CIVIL ACTION NO. 3:19-CV-487-CRS

SAM'S EAST, INC.                                                                                     DEFENDANTS
d/b/a SAM'S CLUB

## MEMORANDUM OPINION

This matter is before the Court on Defendant's motion for summary judgment. DN 15. Plaintiff filed a response. DN 19. Defendant filed a reply. DN 23. The matter is now ripe for adjudication. For the following reasons, Defendant's motion for summary judgment will be granted.

## I. Background

Defendant Sam's East, Inc. ("Defendant" or "Sam's") operates the Sam's Club store located at 1401 Alliant Avenue in Jeffersontown, Kentucky. DN 15 at 1. Plaintiff Ana Bukowski ("Plaintiff" or "Ms. Bukowski") was working at the Jeffersontown Sam's Club on March 12, 2018 when she fell and injured her knee. DN 1 at 2. The question before the Court is whether Ms. Bukowski can sue Sam's for her injuries.

At the time of her fall, Ms. Bukowski was a Sales Advisor for Crossmark, a company contracted by Sam's Club to promote the sale of products within the store. DN 15-1 at 11; DN 17 at 2. As a Sales Advisor, Ms. Bukowski would prepare samples of products and provide them to customers. DN 15-1 at 14. The purpose of this promotion was to increase the sales of those products. *Id*. At the time of her fall, Ms. Bukowski had been a Sales Advisor for at least nine months. DN 19-1 at 8. Ms. Bukowski estimates that 20 Crossmark employees worked at the

Jeffersontown store. DN 19-1 at 14. Of those employees, Ms. Bukowski estimates 10 or 11 would work on any given day. *Id*.

At the time of Ms. Bukowski's fall, she was walking to her sample station inside the Jeffersontown Sam's Club. DN 15-1 at 16-17. Ms. Bukowski alleges she slipped on a grape and injured her knee. DN 15-1 at 5. After her fall, Bukowski applied for and received worker's compensation benefits through a worker's compensation insurance program provided by Crossmark. DN 19-1 at 9.

On February 14, 2019, Ms. Bukowski commenced a civil action against Sam's Club in the Jefferson Circuit Court, alleging that Sam's negligence caused her injuries. DN 1-2 at 14. On July 3, 2019, Sam's removed the action to federal district court based on diversity jurisdiction. DN 1 at 1. On April 3, 2020, Defendant moved for summary judgment, alleging that Crossmark's worker's compensation insurance provided the exclusive remedy for Ms. Bukowski's injuries and that Sam's was statutorily immune from Plaintiff's suit. DN 15 at 2.

## II. Legal standard

A party moving for summary judgment must demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue of material fact is genuine if a rational fact finder could find in favor of either party on the issue. *Id.* at 248.

In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party moving for summary

judgment bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the…presence of a genuine dispute." Fed. R. Civ. P. 56 (c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. Discussion

Defendant argues that, as a "contractor" under KRS §§ 342.610(1) and 342.690(2) of the Kentucky Workers' Compensation Act ("KWCA"), Sam's is entitled to up-the-ladder immunity from this suit because Ms. Bukowski was injured while performing work that was a regular or recurrent part of Defendant's business. DN 15 at 1. Plaintiff responds that Defendant's Motion should be denied because (1) "the work Plaintiff was performing was not the type of work that was a regular and recurrent part of Defendant's business," (2) Sam's Club's relationship with Crossmark was not that of contractor and subcontractor, and (3) Defendant's argument in a previous lawsuit by a different plaintiff precludes Sam's from arguing that it is Ms. Bukowski's up-the-ladder employer. DN 19 at 1-2. Plaintiff's arguments are without merit, and Defendant's motion for summary judgment will be granted.

**A. Regular and Recurrent Work**

Because Ms. Bukowski's work providing samples to Sam's customers was a regular and recurrent part of Sam's business, Defendant is entitled to up-the-ladder immunity. The doctrine of up-the-ladder immunity derives from KRS 342.690(1) and KRS 342.610. Under these two sections, "[a]n entity 'up-the-ladder' from the injured employee that meets all the requirements of

3

KRS 342.610(2) is entitled to immunity under KRS 342.690 and has no liability to the injured employee of the subcontractor." *Pennington v. Jenkins-Essex Constr., Inc.*, 238 S.W.3d 660, 663 (Ky. App. 2006). Kentucky Revised Statute 342.690(1) provides, in relevant part:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee…. ***For purposes of this section, the term "employer" shall include a "contractor" covered by subsection (2) of KRS 342.610***, whether or not the subcontractor has in fact, secured the payment of compensation….

(emphasis added).

In turn, KRS 342.610(2)'s definition of "contractor" includes a person who contracts to "have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." As "immunity pursuant to the exclusivity provision of the Workers' Compensation Act is an affirmative defense," the party claiming the defense bears the burden of proof. *Pennington v. Jenkins-Essex Constr., Inc.*, 238 S.W.3d 660, 663-64 (Ky. App. 2006).

The Sixth Circuit has developed a three-part inquiry to determine whether a Defendant is entitled to up-the-ladder immunity under the KWCA: (1) was the plaintiff hired to perform the work for the defendant, (2), was the work performed by the plaintiff a customary, usual, or normal part of the defendant's business or work that the defendant repeats with some degree of regularity, and (3) was the work performed by the plaintiff work that the defendant or similar businesses would normally perform or be expected to perform with their own employees? *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 585 (6th Cir. 2016).

Regarding the first element of the Sixth-Circuit's three-part test, Plaintiff was hired to perform work for Defendant. *See* DN 15-1 at 14 (Ms. Bukowski agreeing that sales advisers were hired to prepare and give samples to customers to "drive up Sales for Sam's Club"). Regarding the

4

second element, Ms. Bukowski's work providing free samples to customers is a "normal part" of Sam's Club's business that it "repeats with some degree of regularity." *See* DN 15-1 at 9 (Ms. Bukowski explaining that she manned sample stations at the Jeffersontown Sam's Club for 30 hours per week for a period of 9 months before her accident).

Based on the record, it appears that Plaintiff's sole argument with regards to the Sixth-Circuit's three-part test is that Sam's is not entitled to up-the-ladder immunity because Sam's used contractors, not its own employees, to distribute samples to customers inside its store. It is undisputed that Sam's Club only uses Crossmark employees to distribute samples and has done so for several years. DN 15-3 at 3; DN 15-5 at 16. Plaintiff contends that Sam's Club's use of contractors to perform this task is dispositive evidence that distributing samples is not a regular or recurrent part of Sam's Club's business. This assertion is contrary to Kentucky law.

In *Fireman's Fund Ins. Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 462 (Ky. 1986), the Supreme Court of Kentucky addressed the question of whether a construction company that always relied on subcontractors for rough framing could be a "contractor" (and, therefore, an up-the-ladder employer) as defined by the KWCA. The court answered in the affirmative, concluding that whether the builder had employees perform the work or whether it hired subcontractors to perform it was a distinction of "no significance." *Id*. at 461. The court elaborated that "[e]ven though he may never perform that particular job with his own employees, he is still a contractor if the job is one that is usually a regular or recurrent part of his trade or occupation." *Id*. at 462. The court reiterated this holding in *Associates, Inc. v. Uninsured Employers' Fund*, 364 S.W.3d 88, 92 (Ky. 2011) when it held that "a contractor that never performs a particular job with its own employees can still come within KRS 342.610(2)(b)." In short, Ms. Bukowski's assertion that Sam's cannot

5

qualify as a "contractor" for the purposes of the KWCA because it hired subcontractors to provide samples to its customers is not supported by law.

**B. Sam's Club's relationship with Crossmark**

Additionally, Ms. Bukowski alleges Sam's is not entitled to up-the-ladder immunity as a "contractor" under the KWCA because Crossmark's relationship with Sam's was more akin to that of a landlord and tenant than that of a contractor and subcontractor. DN 19 at 7. To support her position, Ms. Bukowski analogizes her case to that in *Smith v. Wal-Mart Stores E., L.P.*, No. 4:04CV-173-M, 2005 U.S. Dist. LEXIS 20232, at *2 (W.D. Ky. Sep. 14, 2005). *Id*. In *Wal-Mart*, the plaintiff was working as a sales associate for a Bluegrass Cellular kiosk inside a Wal-Mart store when she was hit by a falling ceiling tile. *Id*. at *1-*2. The court found that the defendant was not a "contractor" for the purposes of the KWCA because "the relationship between Bluegrass Cellular and Wal-Mart was that of a landlord/tenant, instead of contractor/subcontractor." *Smith v. Wal-Mart Stores E., L.P*., No. 4:04CV-173-M, 2005 U.S. Dist. LEXIS 20232, at *21 (W.D. Ky. Sep. 14, 2005). The Court stated:

> Wal-Mart did not undertake the operations of a cellular phone department in the old Leitchfield Wal-Mart store. Wal-Mart did not contract with Bluegrass Cellular to sell cellular phones and services for Wal-Mart or to run Wal-Mart's cellular phone department. Wal-Mart merely rented or leased a kiosk to Bluegrass Cellular for the purpose of Bluegrass Cellular conducting its own cellular phone business.
>
> *Id*.

These facts are inapposite to the instant case. Sam's hired Crossmark to promote and increase in-store sales of its own products. Crossmark did not merely rent a space for selling its own products. In fact, Crossmark has no "products" to speak of. At the time of Ms. Bukowski's accident, she was promoting a juicer that Sam's was selling inside its Jeffersontown store. DN 19-1 at 15. Because Bukowski's job was to promote Sam's Club's products inside Sam's Club's own stores, her relationship with Sam's is best understood as that of subcontractor and contractor. Case

6

law supports this conclusion. Federal courts have held that work performed by brand merchandisers within retail establishments constitutes regular and recurrent work, immunizing the retail establishment from liability under the KWCA. *See, e.g., Golliher v. Kmart Corp.*, 2016 WL 4262450, at *1 (E.D. Ky. Aug. 10, 2016) (holding that Kmart was a "contractor" under KRS 342.610 and immune from tort liability against a claim asserted by vendor company employee who was injured on Kmart's premises while stocking paper products for sale by Kmart); *Schweitzer v. Walmart Stores, Inc.*, 2017 WL 6517550, at *2 (E.D. Ky. Dec. 20, 2017) (holding that Walmart was a "contractor" under KRS 342.610 and immune from tort liability against a claim asserted by an employee of Advantage Sales Marketing who was injured while working on Walmart's premises marketing products that Walmart sold to its customers).

Like the plaintiffs in *Golliher* and *Schweitzer*, Ms. Bukowski was injured while performing work for the purpose of increasing Sam's Club's retail sales. Ms. Bukowski's product promotion is a regular, customary, and usual part of Sam's Club's retail business as a warehouse club store. This Court can think of few attributes of a Sam's Club warehouse that are more distinctive than its ubiquitous sample stations. The fact that Sam's club chose to contract this part of its business to a subcontractor is a distinction of no significance. The Court finds that Sam's Club and Crossmark shared a contractor-subcontractor relationship such that Sam's Club qualifies as a "contractor" under the KWCA. Accordingly, Sam's Club is entitled to statutory immunity from tort liability for Bukowski's claims as a matter of law.

**C. Judicial Estoppel**

Ms. Bukowski argues that Sam's Club should be judicially estopped from claiming immunity as Ms. Bukowski's up-the-ladder employer because, in a prior lawsuit, Sam's argued

that it was not the "employer" a Crossmark employee. DN 19 at 10. Bukowski's judicial estoppel argument is without merit.

The doctrine of judicial estoppel is an equitable principle designed to protect the integrity of the judicial process by preventing a party from taking inconsistent positions in separate judicial proceedings. *Mefford v. Norton Hospitals, Inc.*, 507 S.W.3d 580, 584 (Ky. App. 2016) (citing *Colston Investment Co. v. Home Supply Co.*, 74 S.W.3d 759, 763 (Ky. App. 2001)). It generally prevents a party from asserting a claim in a legal proceeding that is contrary to a claim asserted by that party in a prior proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001); *Hisle v. Lexington-Fayette Urban County Government*, 258 S.W.3d 422, 434 (Ky. App. 2008). Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (citation omitted). However, it is a harsh doctrine that should be "applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990).

Generally, Kentucky courts consider three factors when determining whether to bar a party from taking a particular position under the doctrine of judicial estoppel: "(1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hisle v. Lexington-Fayette Urban Cty. Gov't*, 258 S.W.3d 422, 435 (Ky. Ct. App. 2008). Applying the elements of judicial estoppel to this case, we find Ms. Bukowski has failed to demonstrate any of the three factors.

First, Ms. Bukowski fails to demonstrate how Sam's position in a prior case is inconsistent with its position here. To support her position, Plaintiff cites *Holt v. Crossmark/Sam's Club*, 2013 WL 3282886 (W.D.N.Y. 2013). The plaintiff in *Holt*, worked for Crossmark "conduct[ing] promotional events inside of Sam's Clubs stores, for the purpose of increasing interest and sales of goods sold by Sam's Club." *Id.* at *3. After her termination by Crossmark, Ms. Holt filed an ADA claim against both Crossmark and Sam's Club. *Id.* Sam's moved to dismiss the plaintiff's claims, in part, on the grounds that Sam's was not her "employer" under the ADA. *Id.*

Sam's argument in the prior case has no relevance here because the definition of an "employer" under 2nd Circuit case law interpreting the ADA is entirely different from the definition of a "contractor" entitled to up-the-ladder immunity under 6th Circuit case law interpreting the KWCA. *See Lima v. Addeco*, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009) (explaining that for a defendant to be a joint employer under the ADA, the plaintiff must allege "commonality of hiring, firing, discipline, pay, insurance, records, and supervision"). *Id.* at 399-400. Ms. Bukowski has not presented any authority, and this Court finds none, to support her argument that an entity who denies its status as an "employer" under the ADA is estopped from arguing that it is a "contractor" under the KWCA. Accordingly, this prong favors Sam's.

Second, Sam's did not "succeed" in arguing to the *Holt* court that it was not the plaintiff's "employer" under the ADA. The *Holt* court found in favor of Sam's because the plaintiff "failed to allege that she suffered a disabling condition, or that Crossmark knew or believed that she suffered from a disabling condition." *Holt*, No. 13-CV-6142T, at *13. The *Holt* court did not reach the question of whether Sam's was the plaintiff's "employer." Therefore, there is no evidence that Sam's argument "succeeded." Accordingly, this prong favors Sam's.

9

Third, Ms. Bukowski presents no evidence that Sam's will derive an "unfair advantage or impose an unfair detriment" on Ms. Bukowski if not estopped from arguing that it is entitled to immunity as a "contractor" under the KWCA. Nothing about Defendant's arguments are "unfair" or would otherwise justify estopping it from pleading a legally available defense. Accordingly, this final prong also favors Sam's, and application of judicial estoppel is unwarranted.

The Court finds that Ms. Bukowski was injured while performing a regular and recurrent part of Sam's Club's retail business. Consequently, the Court finds that Sam's was a "Contractor" within the meaning of the KWCA. As Sam's arguments are not inconsistent with its prior arguments in *Holt*, Sam's Club is entitled to up-the-ladder immunity from Bukowski's suit.

### IV. Conclusion

For the reasons stated above, the Court will grant Defendant's motion for summary judgment. DN 15. A separate order will be entered this date in accordance with this memorandum opinion.

July 8, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**